IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DORIS LEON DE RODRIGUEZ,      )
                              )
              Plaintiff,      )
                              )
     v.                       )          1:18CV715
                              )
NANCY A. BERRYHILL,           )
Acting Commissioner of Social )
Security,[1]                  )
                              )
              Defendant.      )


### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Doris Leon de Rodriguez, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 9, 11; see also Docket Entry 10 (Plaintiff's Memorandum); Docket Entry 12 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB alleging a disability onset date of November 1, 2014. (Tr. 140-46.) Plaintiff later amended her alleged disability onset date to December 21, 2014, her 50th birthday. (Tr. 171.) Upon denial of that application initially (Tr. 53-62) and on reconsideration (Tr. 64-73), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 87-88). Plaintiff, her attorney, an interpreter, and a vocational expert attended the hearing. (Tr. 35-52.) By decision dated June 30, 2017, the ALJ determined that Plaintiff did not qualify as disabled under the Act. (Tr. 9-31.) On June 19, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2018.

2. [Plaintiff] has not engaged in substantial gainful activity since November 1, 2014, the alleged onset date.

3. [Plaintiff] has the following severe impairments: ankylosing spondylosis (variously diagnosed as HLA-B27 spondyloarthropathy); and obesity.

. . . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . . .

5.   . . . [Plaintiff] has the residual functional
capacity to perform light work . . . except that
[Plaintiff] may stand for 6 hours, and walk for 6 hours
in an 8-hour day for no more than 1 hour at a time before
taking no more than 2 minutes to adjust position and
resume or take a new position; she may lift and carry 20
pounds occasionally and 10 pounds frequently; [Plaintiff]
may frequently climb stairs and never climb ladders; she
may frequently stoop, kneel, crouch and crawl; and
[Plaintiff] must avoid concentrated exposure to hazards.

. . . .

6.   [Plaintiff] is unable to perform any past relevant
work.

. . . .

10.   Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [Plaintiff] can perform.

. . . .

11.   [Plaintiff] has not been under a disability, as
defined in the [] Act, from November 1, 2014, through the
date of this decision.

(Tr. 17-26 (internal citations omitted).)[2]

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security

Commissioner's denial of social security benefits."  Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope

---

[2] The ALJ failed to acknowledge in his decision that Plaintiff amended her
alleged onset date from November 1, 2014, to December 21, 2014.  (See Tr. 15, 17,
26.)  However, that error remains harmless under the circumstances presented by
this case, as a finding that Plaintiff did not qualify as disabled from November
1, 2014, to June 30, 2017, also encompasses a finding that she did not so qualify
from December 21, 2014, to June 30, 2017.

of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]   "To regularize the

---

[3]   The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons.   The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."   Craig, 76 F.3d at 589 n.1 (internal citations

adjudicative process, the Social Security Administration has . . .
detailed regulations incorporating longstanding medical-vocational
evaluation policies that take into account a claimant's age,
education, and work experience in addition to [the claimant's]
medical condition." Id. "These regulations establish a
'sequential evaluation process' to determine whether a claimant is
disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five
steps: "The claimant (1) must not be engaged in 'substantial
gainful activity,' *i.e.*, currently working; and (2) must have a
'severe' impairment that (3) meets or exceeds the 'listings' of
specified impairments, or is otherwise incapacitating to the extent
that the claimant does not possess the residual functional capacity
to (4) perform [the claimant's] past work or (5) any other work."
Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2
(4th Cir. 1999).[4] A finding adverse to the claimant at any of
several points in the SEP forecloses an award and ends the inquiry.
For example, "[t]he first step determines whether the claimant is
engaged in 'substantial gainful activity.' If the claimant is
working, benefits are denied. The second step determines if the

omitted).

[4] "Through the fourth step, the burden of production and proof is on the
claimant. If the claimant reaches step five, the burden shifts to the
[Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

claimant is 'severely' disabled.  If not, benefits are denied."
Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary

---

[5]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[6]

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ "failed to evaluate properly the treating rheumatologist's opinion as required by 20 C.F.R. § 404.1527(c) and Fourth Circuit case law" (Docket Entry 10 at 4 (bold font omitted and standard capitalization applied)); and

(2) the ALJ "failed to provide adequate reasons for rejecting Plaintiff's description of her symptoms" (<u>id.</u> at 9 (bold font omitted and standard capitalization applied)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (<u>See</u> Docket Entry 12 at 4-18.)

## 1.  Treating Rheumatologist's Opinion

Plaintiff first faults the ALJ for failing to properly evaluate the opinion of Plaintiff's treating rheumatologist, Dr. George Kernodle.  Based on a diagnosis of spondyloarthropathy/ankylosing spondylitis, Dr. Kernodle provided

---

[6]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

a functionality assessment, dated November 12, 2015, in which he opined that Plaintiff could stand or walk for less than 2 hours in an 8-hour day and rarely carry 10 or 20 pounds in the same span. (Tr. 489.)  Dr. Kernodle later expanded on this assessment in a letter dated February 23, 2017, attributing Plaintiff's restrictions to "pain in her spine . . . both at rest . . . and with motion which limits her ability to lift/bend/walk regularly. She also has limited motion of her spine."  (Tr. 803.)  Dr. Kernodle treated Plaintiff for spondyloarthropathy beginning on June 9, 2015.  (See Tr. 442-48.)  On August 7, 2015, Dr. Kernodle noted that Plaintiff tested positive for HLA-B27, an indicator of spondyloarthropathy, and that Plaintiff's "MRI showed inflamation of the thoracic spine consistent with spondyloarthropathy."  (Tr. 438-41.)

The ALJ gave only partial weight to Dr. Kernodle's opinion, saying that Dr. Kernodle "overstated the extent of [Plaintiff's] limitations."  (Tr. 24.)  However, Plaintiff insists that "[a]dherence to the relevant regulations and Fourth Circuit [c]ase law would result in according great weight to the opinion of the rheumatologist who had treated Plaintiff for three years." (Docket Entry 10 at 9.)  Plaintiff further maintains that the evidence the ALJ relied on in affording Dr. Kernodle's opinion little weight does not actually contradict his opinion of Plaintiff's limitations.  (Id. at 7.)  In addition, Plaintiff argues that the

ALJ essentially "cherry picked" evidence to contradict Dr. Kernodle's opinion even though the record as a whole offered ample evidence to support it. (Id. at 5 (citing Lewis v. Berryhill, 858 F.3d 858 (4th Cir. 2017)).) Lastly, Plaintiff contends that the ALJ failed to take proper account of the length of Dr. Kernodle's relationship with Plaintiff, and that the ALJ failed to "create an accurate and logical bridge from the evidence to his conclusions regarding the medical and testimonial evidence." (Id. (citing Brown v. Commissioner Soc. Sec. Admin., 873 F.3d 251 (4th Cir. 2017), and Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016)).) Plaintiff's arguments miss the mark.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. See 20 C.F.R. § 404.1527(c)(2). Not all treating sources merit the same deference, however, as the nature and extent of each treatment relationship tempers the weight an ALJ gives an opinion. See 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions, deserves deference only if well supported by signs and medical findings and consistent with the other substantial evidence in the case record. See 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other

substantial evidence, it should be accorded significantly less weight." <u>Craig</u>, 76 F.3d at 590. However, an ALJ "has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." <u>Lewis</u>, 858 F.3d at 869 (quoting <u>Denton v. Astrue</u>, 596 F.3d 419, 425 (7th Cir. 2010)).

Here, the ALJ based his decision to afford Dr. Kernodle's opinion partial weight on several treatment notes, along with other evidence in the record, that the ALJ deemed inconsistent with Doctor Kernodle's opinion, which he proffered in the format of a single-page, sparsely-annotated checkbox form. (<u>See</u> Tr. 804.) In that regard, the ALJ cited three treatment notes that he found inconsistent with Dr. Kernodle's opinion that Plaintiff suffered from extreme limitations, including one from Dr. Kernodle himself. (<u>See</u> Tr. 24-25.) First, the ALJ recited that, during a visit on September 29, 2016, Plaintiff's primary care provider, Dr. Neelam Khan, recorded that Plaintiff denied both pain and stiffness in her neck and joints, and that "Dr. Khan reported that Humira was helpful." (<u>Id.</u>) The ALJ also observed that, on November 7, 2016, Plaintiff acknowledged that "she did not feel poorly, she reported that she felt better, and she offered no new complaints." (Tr. 25.) The ALJ finally pointed out that, the following day, Dr.

Kernodle himself declared that Plaintiff "was doing much better with Humira." (Id.)

Moreover, earlier in the decision, the ALJ cited other evidence in the record showing that Plaintiff had generally good function, including other treatment notes and Plaintiff's own statements about her activities of daily living. (See Tr. 22-24.) For example, the ALJ noted:

- Dr. Francisco Naveira's "observ[ation] that [Plaintiff's] reported pain symptoms were not compatible with exhibited behavior" (Tr. 22; see also Tr. 732);

- a treatment note from a chiropractic examiner, dated February 18, 2015, that recognized Plaintiff's "ability to lift had improved within normal limits when she raised her arms" and that Plaintiff's "[r]ange of motion and function were full otherwise" (Tr. 23; see also Tr. 384);

- Plaintiff's presentation at Alamance Regional Medical Center on July 24, 2015, as "in no acute distress" (Tr. 23; see also Tr. 425-27);

- Plaintiff's presentation at Cone Health (erroneously referred to by the ALJ as Alamance Regional Medical Center) on June 25, 2016, as "well appearing and in no acute distress," as well as Plaintiff's denial of lower extremity weakness and demonstration of stable gait (Tr. 23-24; see also Tr. 773); and

- Plaintiff's own report that she "shops in stores for food and personal hygiene items, she makes homemade soups and prepares meals 2 to 3 times a week, she goes to church, the health center and the pharmacy, and she does laundry" (Tr. 24 (citing a Function Report dated January 21, 2015 (Tr. 184-92))).

The ALJ's evaluation of the state agency medical consultants' opinions provides further support for his decision to discount Dr. Kernodle's opinion. (See Tr. 24.) Although the ALJ accorded "significant weight" to the consultants' "overall conclusions that [Plaintiff wa]s not disabled because the clinical record show[ed] good function with treatment," the ALJ assigned "little weight" to the consultants' opinions that Plaintiff remained capable of performing "a full range of medium work . . ., because [the consultants] did not examine [Plaintiff ] and [] did not adequately consider her complaints of pain." (Id.) Thus, the ALJ's light RFC (see Tr. 20) reasonably resolved the conflict between Dr. Kernodle's extreme, sub-sedentary opinions and the consultants' medium-level RFC opinions, see McNeill v. Berryhill, No. 1:16CV1081, 2017 WL 1184187, at *10 (M.D.N.C. Mar. 29, 2017) (unpublished) (finding no error in ALJ's evaluation of opinion evidence where, "by adopting a light-exertion RFC, the ALJ struck a balance between the state agency physicians's medium-exertion RFC and the less-than-sedentary-exertion limitations opined by [the claimant's treating physicians]"), recommendation adopted, slip op. (M.D.N.C. Apr. 24, 2017) (Eagles, J.).

Additionally, in keeping with 20 C.F.R. § 404.1527(c)(2), the ALJ acknowledged Dr. Kernodle's status as a specialist with opinions entitled to due weight. (See Tr. 24.) The ALJ then went on to explain why he found Dr. Kernodle to have overstated

Plaintiff's limitations due to the lack of consistency between those restrictions and the rest of the record, as well as Plaintiff's documented improvement on medication. (See id.); see also 20 C.F.R. § 404.1527(c)(4). The ALJ supported his finding with the evidence discussed above, which a reasonable mind could accept as grounds to discount Dr. Kernodle's restrictive, checkbox opinion. See Hunter, 993 F.2d at 34.

Plaintiff further contends that the ALJ ran afoul of Brown by failing to give greater weight to Dr. Kernodle's opinion (see Docket Entry 10 at 5 (citing Brown, 873 F.3d 251)), noting that he had treated Plaintiff for "three years" (id. at 9). In that decision, the United States Court of Appeals for the Fourth Circuit found that the ALJ erred in "dismissing the opinions of those who had examined and treated [the claimant] dozens of times over many years." Brown, 873 F.3d at 268. Here, though, the earliest treatment note from Dr. Kernodle, labeled "[i]nitial consult" (Tr. 442), dates to June 19, 2015 (see Tr. 442-48), approximately five months and a handful of visits before Dr. Kernodle rendered his opinion on Plaintiff's limitations (see Tr. 489), reflecting a treatment relationship far less extensive than that considered in Brown. Therefore, this factor does not militate decisively in favor of giving Dr. Kernodle's opinion controlling weight, and does not vitiate the ALJ's decision.

Next, Plaintiff asserts that the ALJ should not have relied on Dr. Khan's treatment note of September 29, 2016, because of a letter from Dr. Khan explaining that the treatment note erroneously repeated one of the entries in the "Review of Systems" section from previous visits. (Docket Entry 10 at 7 (citing Tr. 806).) Accordingly, Plaintiff contends, the ALJ incorrectly relied on the sections in which Plaintiff denied neck or joint pain. (Id.) However, Dr. Khan's letter refers only to one entry on the treatment note under the sub-heading "Social History" which reads "Functional: No physical disability and activities of daily living were normal." (Tr. 806.) The ALJ acknowledged this error earlier in his decision (Tr. 22) and did not rely on that section of the treatment note in evaluating Dr. Kernodle's opinion (Tr. 24). Instead, the ALJ cited to the section relating to Plaintiff's reported neck and joint pain and stiffness. (Id.) Unlike the "Functional" section of the treatment notes from Dr. Khan's office, the "Review of Systems" section containing Plaintiff's complaints of neck and joint pain and stiffness changed from visit to visit, indicating that Dr. Khan had actively noted those complaints during previous visits. (See, e.g., Tr. 426, 428, 432, 435, 677.)

Plaintiff also argues that the ALJ "mischaracterized" Dr. Khan's treatment note from November 7, 2016, and "claimed it showed that Plaintiff was doing well and feeling fine." (Docket Entry 10 at 7-8.) But the ALJ simply used the descriptions of Plaintiff's

conditions exactly as they appear in the treatment note, saying that Plaintiff "did not feel poorly" (apparently referring to an entry in the "Review of Systems" section of the note which varied on previous visits to Dr. Khan's office (see, e.g., Tr. 428, 432, 435, 677, 687)), as well as that "she reported that she felt better, and she offered no new complaints" (referring to the "Reason for Visit" section of the note, which reads in relevant part, "Pt is feeling better, offers no new complaints" (Tr. 692)).

Regarding Dr. Kernodle's treatment note from November 8, 2016, Plaintiff contends that, although "[t]he note does document improvement from Humira, [it] does not indicate that Plaintiff would be able to stand and walk six hours in an eight-hour work day, which was the ALJ's finding of [RFC]." (Docket Entry 10 at 8.) Further, Plaintiff cites a letter from Dr. Kernodle dated February 23, 2017, written two months after the treatment note in question, in which (according to Plaintiff) Dr. Kernodle "still felt that Plaintiff had the same limitations she had had in November 2015 when he wrote his first opinion." (Id. (citing Tr. 803-04).) In fact, in that letter, Dr. Kernodle did not expressly readopt his earlier restrictions. (See Tr. 88.) Rather, Plaintiff's counsel requested Dr. Kernodle to explain why Plaintiff's spine condition caused "such severe limitations." (Id.) Dr. Kernodle responded by writing generally of spondyloarthritis but said of Plaintiff specifically only that she

"has pain in her spine . . . both at rest (night) and with motion which limits her ability to lift/bend/walk regularly – she also has limited motion of her spine." (Tr. 803.) Moreover, like the opinion he rendered in November of 2015, Dr. Kernodle appeared to base his opinion of Plaintiff's limitations primarily on her subjective reports of pain. (Id.) Therefore, the ALJ's findings on the consistency of Plaintiff's subjective complaints of pain, discussed more fully below, appropriately factored into the ALJ's assessment Dr. Kernodle's opinion. As noted, the ALJ pointed to specific evidence in the record, including in Dr. Kernodle's own treatment notes, that showed improvement (see Tr. at 21-24) and that described Plaintiff's condition as in the "mild case range" (Tr. 22 (referencing Tr. 802)), contradicting her subjective reports.

Contrary to Plaintiff's assertion, the ALJ did not cherry pick evidence to support a disability finding while ignoring evidence that points to disability. To the contrary, he considered the record as a whole, including documented evidence of improvement, and found substantial evidence that contradicted Dr. Kernodle's opinion. Therefore, the ALJ's decision to afford Dr. Kernodle's opinion partial weight comports with the relevant regulations and with Craig.

## 2. Plaintiff's Description of Her Symptoms

Plaintiff next asserts that the ALJ failed to provide adequate reasons for rejecting Plaintiff's description of her symptoms. (See Docket Entry 10 at 9.) At her hearing with the ALJ, Plaintiff testified that she can stand for a maximum of half an hour before needing to lie down to relieve her pain. (See Tr. 37.) Plaintiff further testified that she experiences pain in her whole body, including her hands, shoulders, neck, hips, and legs. (See Tr. 39.) According to Plaintiff, the ALJ incorrectly relied on the same faulty treatment notes he used to give partial weight to Dr. Kernodle's opinion, and "fail[ed] to provide a clear explanation for essentially rejecting Plaintiff's description of her symptoms, violat[ing] Monroe." (Docket Entry 10 at 9-10 (citing Monroe, 826 F.3d at 176).) Finally, Plaintiff argues that, because the ALJ found that "Plaintiff could perform light work on [H]umira, then the logical extension of this premise is that she was *unable* to perform light work before." (Docket Entry 13 at 3-4.)

Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("SSR 16-3p") (consistent with the Commissioner's regulations) adopts a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3;

see also 20 C.F.R. § 404.1529.[7]  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3.  A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4.  In making that determination, the ALJ must "examine the

---

[7] Applicable to ALJ decisions on or after March 28, 2016, the Social Security Administration superceded Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"), with SSR 16-3p.  The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. at *1.  The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1.  The ALJ's decision in this case postdates the effective date of SSR 16-3p (see Tr. 26) and, thus, this Recommendation will apply SSR 16-3p to Plaintiff's argument regarding the ALJ's subjective symptom evaluation.

entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7-8. The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5 (emphasis added).

When evaluating a claimant's subjective complaints about their symptoms, however, the ALJ need not take those complaints "'at face value.'" Squires v. Colvin, No. 1:16CV190, 2017 WL 354271, at *5 (M.D.N.C. Jan. 24, 2017) (unpublished) (quoting Ramos-Rodriguez v. Commissioner of Soc. Sec., Civ. No. 11-1323 (SEC), 2012 WL 2120027, at *3 (D.P.R. June 11, 2012) (unpublished)), recommendation adopted, slip op. (M.D.N.C. Mar. 6, 2017) (Schroeder, J.). Furthermore, the ALJ must consider the effectiveness of treatment when evaluating subjective symptoms. See 20 C.F.R. § 404.1529(c)(3)(iv).

Here, the ALJ sufficiently explained his decision to discount Plaintiff's description of her symptoms. First, the ALJ correctly laid out the two-step process for evaluating a claimant's symptoms. (See Tr. 20.) Next, he outlined Plaintiff's relevant medical history, including mild diagnostic findings and improvement on medication. (See Tr. 21-23.) The ALJ then expressly discussed Plaintiff's testimony regarding her pain, her trouble with both sitting and standing for long periods of time, and her trouble carrying a gallon of milk. (See Tr. 23.) Ultimately, the ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . ., [her] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in

21

the record . . . ." (Id.)  He supported that finding with the

following substantial evidence:

> The record shows a history of treatment for
> spondyloarthropathy. However, a light [RFC] is
> appropriate in this case because the recent record shows
> improvement with medication. Specifically, notes of
> September 26, 2016 showed good function. [Plaintiff]
> denied neck pain and neck stiffness, she denied muscle
> aches, she denied joint pain and joint stiffness, and she
> denied anxiety or sleep disturbance. Dr. Khan reported
> that Humira was helping [Plaintiff's] spondylitis. She
> had better pain control, she slept better, and she denied
> stress or anxiety. Follow-up notes of November 7, 2016
> were just as positive. In review of symptoms,
> [Plaintiff] reported that she was not feeling poorly.
> She denied headache, facial pain, joint pain, joint
> stiffness, and sleep disturbance. Dr. Kernodle reported
> the following day that [Plaintiff] was doing much better
> on Humira. She denied morning stiffness and site
> reactions. Lateral bending was good, [her] hips moved
> well, her shoulders moved well, and there were no knee
> effusions. Of note, [Plaintiff] was not always compliant
> with treatment. Dr. Kernodle reported on September 8,
> 2016, that [Plaintiff] was in a good deal of chronic
> pain. However, she had come off her medications because
> she was worried about side effects. Dr. Kernodle
> encouraged her to resume medications.
>
> Other exam notes show generally good function. A
> chiropractic examiner reported on February 18, 2015 that
> [Plaintiff's] ability to lift had improved within normal
> limits when she raised her arms. She reported 2/10 using
> the visual analog scale. Range of motion and function
> were full otherwise. [Plaintiff] denied malaise on July
> 24, 2015, and she presented in no acute distress.
> [Plaintiff] presented to Alamance Regional Medical Center
> on June 25, 2016, as well-appearing and in no acute
> distress. She denied lower extremity weakness, [her]
> gait was stable, and her mood and affect were normal.
> Furthermore, [Plaintiff's] daily activities show
> generally good functionality. She shops in stores for
> food and personal hygiene items, she makes homemade soups
> and prepares meals 2 to 3 times a week, she goes to
> church, the health center and the pharmacy, and she does
> laundry.

(Tr. 23-24 (internal citations omitted).)  In addition, as discussed above, the ALJ's evaluation of the opinion evidence, striking a balance between the medium-exertion RFC of the state agency medical consultants and the sub-sedentary restrictions of Dr. Kernodle (see Tr. 24-25), provides further support for the ALJ's discounting of Plaintiff's allegations of disabling symptoms.

Given this record, Plaintiff's contention that, like in Monroe, the ALJ failed to connect the evidence with his conclusion misses the mark.  (See Docket Entry 10 at 10.)  In that case, the Fourth Circuit found an ALJ to have committed remandable error by failing to explain how normal results from pulmonary and respiratory tests or the intensity of the plaintiff's sleep apnea had any relevance to the plaintiff's narcolepsy.  See Monroe, 826 F.3d at 190.  Here, in contrast, the evidence cited by the ALJ correlates with Plaintiff's symptoms.  Plaintiff testified that she could not stand for more than half an hour at a time and had problems lifting and carrying things due to pain in her whole body, including her hands, shoulders, elbows, neck, hips, and legs.  (See Tr. 37-39.)  The ALJ reasonably concluded that evidence in the medical record documenting no joint pain, malaise, or lower extremity weakness and demonstrating stable gait, full range of motion and function, and an ability to lift within normal limits undermined Plaintiff's testimony.  The ALJ must examine all of the evidence when evaluating the intensity and persistence of a

claimant's symptoms and the extent to which they limit a claimant's capacity for work.  See 20 C.F.R. § 404.1529(c).  In doing so here, the ALJ found, and recited in his decision, substantial evidence to support his analysis.

Finally, Plaintiff mischaracterizes the ALJ's decision by arguing that, because the ALJ found that "Plaintiff could perform light work on [H]umira, then the logical extension of this premise is that she was *unable* to perform light work before."  (Docket Entry 13 at 3-4.)  Although the ALJ did cite Plaintiff's recent improvement on medication as a contributing factor, he did not rely exclusively on that improvement in formulating Plaintiff's RFC.  (See Tr. 20-25.)  To the contrary, the ALJ considered all of the medical evidence of record, including treatment notes dating back to February of 2012.  (See Tr. 21.)  As documented above, the ALJ cited treatment notes that showed generally good function from as early as February 18, 2015, more than 18 months before Plaintiff began taking Humira, and less than two months after Plaintiff's amended onset date.  (See Tr. 23; see also Tr. 384.)  Elsewhere in the RFC portion of the decision, the ALJ cited previous instances of improvement on other medication (see Tr. 21, 22) and a period during which Plaintiff "was not entirely compliant with treatment" (Tr. 22).  Simply put, Plaintiff's recent improvement did not represent the only evidence on which the ALJ relied in formulating Plaintiff's RFC.

In sum, as the Commissioner correctly points out, the record presents substantial evidence to support "'two contrary conclusions.'" (Docket Entry 12 at 17 (quoting <u>Wines v. Commissioner of Soc. Sec.</u>, 268 F. Supp. 2d 954, 960 (N.D. Ohio 2003)).) Given that circumstance, the Court must "uphold the factual findings of the ALJ" where (as here) he "reached [them] through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgement Reversing or Modifying the Decision of the Acting Commissioner of Social Security, or Remanding the Case for a Rehearing (Docket Entry 9) be denied, and that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 26, 2020